## PEOPLE ex rel. PEABODY v. BAKER.

(Supreme Court, Special Term, Dutchess County. May 18, 1908.)

1. CRIMINAL LAW—TRIAL—ISSUE OF INSANITY—SANITY AT TIME OF TRIAL.

    In a prosecution for murder, the defense being insanity, the accused had the right to appear in person, and to be represented by counsel, and to introduce evidence of his present sanity.

2. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DEPRIVATION OF LIBERTY—COMMITMENT TO INSANE ASYLUM ON ACQUITTAL ON GROUND OF INSANITY.

    Code Cr. Proc. § 454, provides that, where a defendant is acquitted on the ground of insanity, the court must, if it deems his discharge dangerous to the public peace or safety, order him to be committed to the state lunatic asylum until he becomes sane. One acquitted of homicide on the ground of insanity, and committed to the state hospital, had had the opportunity, on his trial, to introduce evidence of his present mental condition, and was represented by able counsel, who urged the jury before whom he was tried to acquit him be cause of his insanity. *Held*, that there was no violation of Const. N. Y. art. 1, § 6, nor of Const. U. S. art. 14, in that defendant, having received no notice of a hearing upon the question of insanity, was deprived of his liberty without due process of law, since he should have known that the court's adjudication would follow a verdict of not guilty by reason of insanity.

3. SAME—DETERMINATION OF CONSTITUTIONALITY OF STATUTORY PROVISIONS—PRESUMPTION IN FAVOR OF VALIDITY.

    Code Cr. Proc. § 454, providing for the commitment to the state lunatic asylum of. one acquitted on the ground of insanity, having been in existence and operation for many years without question, it was the court's duty to presume in favor of its validity until its violation of the Constitution was established beyond all reasonable doubt, and upon such a determination the result which may follow from one construction or another is always a potent factor, and is sometimes in and of itself conclusive.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 46.]

4. SAME—EFFECT OF EXISTENCE OF RIGHT OF APPEAL.

    It is well settled that, where there is a right of an appeal, no court should declare in the first instance a statute unconstitutional, unless its unconstitutionality is plain, especially where the statute has been long in force and its constitutionality has never been questioned.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 46.]

Habeas corpus by the people, on the relation of A. Russell Peabody, against Amos T. Baker, as assistant and acting medical superintendent of the Matteawan State Hospital, by which Harry K. Thaw was directed to be .produced in court. The petition set forth that Thaw was illegally imprisoned, that he was sane, and that the act under which he was committed was unconstitutional. Writ dismissed.

James G. Graham and A. Russell Peabody, for relator.

John E. Mack, Dist. Atty., William Travers Jerome, Dist. Atty., and Asst. Dist. Attys. Garvin and Johnston, for respondent.

MORSCHAUSER, J. Upon application duly made a writ of habeas corpus was allowed by which Harry K. Thaw was directed to be produced in court. In the petition it is alleged that said Thaw is illegally imprisoned and restrained of his liberty by Amos T. Baker, acting su-

perintendent of Matteawan State Hospital, a state institution for the insane. Thaw's detention is attacked upon the grounds: First, that he is now sane; second, that the act under the provisions of which he was committed and detained is unconstitutional, and that the court was without jurisdiction to issue the order of commitment, and such order was null and void. The return to the writ alleges that said Thaw is now insane, and that the statute providing for the confinement of said Thaw is constitutional and valid, and that the court had jurisdiction to make the order of commitment. The return is traversed by the relator.

The events leading up to the commitment of Thaw are in brief as follows: On June 25, 1906, Thaw shot and killed one Stanford White. He was indicted for this act in the county of New York, and the indictment charged him with murder in the first degree. On January 23, 1907, he was brought to trial on this indictment, and during the progress of this trial, on application of the district attorney under section 658 of the Code of Criminal Procedure, a commission was duly appointed to ascertain whether at the time of the trial said Thaw was in a state of idiocy, lunacy, or insanity, so as to be incapable of rightly understanding his own condition, the nature of the charge against him, and of conducting his defense in a rational manner. The commission afterwards returned to the court that it was their opinion that at the time of their examination said Thaw was sane and was capable of understanding his own condition and the nature of the charge against him, and conducting his defense in a rational manner. This conclusion was reached in accordance with the purpose of the statute. The trial proceeded, and resulted in a disagreement of the jury. On the 6th day of January, 1908, said Thaw was again tried on said indictment and acquitted on the ground of insanity. Thereupon the learned justice presiding at the trial, upon the evidence, made an order reciting the verdict and that the court deemed the discharge of said Thaw at that time to be dangerous to public safety, and directing that said Thaw be detained in safe custody and be sent to the Matteawan State Hospital, there to be kept until discharged by due process of law.

The proof and evidence on the part of the respective parties have been ably presented, and the matter has been submitted. Thaw, at the time of his trial for homicide, as a defense pleaded insanity, and presented proof to show his insanity at the time of the killing of White, and by the proof offered on his behalf the jury was convinced that he was insane, and acquitted him upon that ground. I am satisfied from the evidence adduced before me that the mental condition of Harry K. Thaw has not changed, and I find that he is now insane, and that it is so manifest as to make it unsafe for him to be at large. To review the voluminous evidence adduced on the hearing would unnecessarily lengthen this opinion. Thaw was committed pursuant to section 454 of the Code of Criminal Procedure, which reads as follows:

"Sec. 454. When Defendant Acquitted on the Ground of Insanity, the Fact to be Stated with the Verdict. Commitment of Defendant to State Lunatic Asylum. When the defense is insanity of the defendant the jury must be instructed, if they acquit him on that ground to state the fact with their verdict. The court must, thereupon, if the defendant be in custody, and they

deem his discharge dangerous to the public peace or safety, order him to be committed to the state lunatic asylum, until he becomes sane."

The question of the constitutionality of this law is assailed by the relator, in that he claims there was no notice given to Thaw of a hearing upon the question of insanity, that no hearing was accorded to him, that he has been deprived of his liberty without due process of law, and that the statute under which he was committed does not provide a method by which his mental condition as then existing could be legally ascertained, or any method by which his sanity could be shown. The people contend that Thaw was not deprived of his liberty without due process of law, because he knew that if he chose to prove upon the trial of the indictment that he was insane when he killed Stanford White, and if that defense was successful and the jury acquitted him of the charge against him on that ground, it became the duty of the court, if it deemed his discharge dangerous to the public peace or safety, to order him to be committed to the state lunatic asylum until such time as he should be legally adjudged sane. He had the right to appear in person and to be represented by counsel, and he had the right to introduce evidence of his present sanity. People v. Koerner, 117 App. Div. 40, 102 N. Y. Supp. 93; People v. Hoch, 150 N. Y. 291, 44 N. E. 976. If upon all the evidence and the verdict of the jury the court should decide his discharge to be dangerous to the public peace and safety, and commit the defendant to an insane hospital until sane, under the provisions of section 454 of the Code of Criminal Procedure, and Thaw having had this opportunity of a full hearing, this right to be represented in person and by counsel, this right of offering proof in his own behalf as to his present sanity and to be fully heard in his own behalf, there was no violation of article 1, § 6, of the Constitution of the state of New York, nor of article 14 of the United States Constitution.

Thaw had the opportunity on the trial to introduce evidence of his mental condition at that time, which he did not do. He should have known that the adjudication of the court would follow a verdict of not guilty by reason of insanity. He was represented by able counsel, who urged the jury before whom he was tried upon a charge of homicide to acquit him because of his insanity. I have made careful examination of the authorities, and I do not find that this statute has ever been passed upon by any of the courts in this state. It has been in existence and operation for many years without question, and it is the duty of the court to presume in favor of the validity of the statute until its violation of the Constitution is established beyond all reasonable doubt; and upon such a determination the result which may follow from one construction or another is always a potent factor, and is sometimes in and of itself conclusive. People ex rel. Carter v. Rice, 135 N. Y. 473–506, 31 N. E. 921, 16 L. R. A. 836. As was stated by Earl, J., in Sweet v. City of Syracuse, 129 N. Y. 316–350, 29 N. E. 289, 294:

"In conclusion, it should further be said that in dealing with the constitutional objections * * * proper heed must be given to the canon of construction, often reiterated by eminent judges, that when a statute is challenged as in conflict with the fundamental law a clear and substantial conflict must be found to exist to justify its condemnation. As said by Mr.

Justice Washington in Ogden v. Saunders, 12 Wheat. (U. S.) 270, 6 L. Ed. 606: 'It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt.' "

In People v. Budd, 117 N. Y. 1, 29, 22 N. E. 670, 682, 5 L. R. A. 559, 15 Am. St. Rep. 460, Justice Andrews says:

"But it is ever to be remembered that a statute must stand so long as reasonable doubt can be indulged in favor of its constitutionality."

"Every act of the Legislature must be presumed to be in harmony with the fundamental law until the contrary is clearly made to appear." People ex rel. Kemmler v. Durston, 119 N. Y. 569-577, 24 N. E. 6, 8, 7 L. R. A. 715, 16 Am. St. Rep. 859.

"Whenever an act of the Legislature can be so construed and applied as to avoid conflict with the Constitution and give it the force of law, such construction will be adopted by the courts." Cooley on Const. Lim. 218, 219.

"Before an act of the Legislature can be declared void, as repugnant to the Constitution, the conflict must be manifest." Matter of Stilwell, 139 N. Y. 337–341, 34 N. E. 777, 778.

Mr. Justice Harris, in 17 N. Y. 241, delivering the opinion of the majority of the Court of Appeals, says:

"Before proceeding to annul by judicial sentence what has been enacted by the lawmaking power, it should clearly appear by intendment or allowable presumption."

As was said by Chief Justice Parker, in People v. Lochner, 177 N. Y. 157, 69 N. E. 377, 101 Am. St. Rep. 773:

"In the early history of this country eminent writers gave expression to the fear that the power of the courts to set aside the enactments of the representatives chosen to legislate for the people would in the end prove a weak point in our governmental system, because of the difficulty of keeping the exercise of such great power within its legitimate bounds. So far in our judicial history it must be said that the courts have in the main been conservative in passing upon legislation attacked as unconstitutional."

In construing this statute it should be borne in mind that the safety and welfare of the community is of more importance than the freedom of the individual. It is well settled that where there is a right of an appeal no court should declare in the first instance a statute unconstitutional unless its unconstitutionality is plain, especially when the statute has been long in force and its constitutionality has never been questioned. This may well be the rule when the effect of a declaration of unconstitutionality would be to free from needful restraint a number of persons of unsound mind, of whom it has been adjudged by competent courts that their going at large would be dangerous to the public peace or safety.

The relator claims that the statute does not provide a method by which Thaw can be discharged. Section 99 of the insanity law (Laws 1896, p. 508, c. 545) provides:

"Any inmate, not a convict, held upon an order of a court or judge in a criminal proceeding may be discharged therefrom upon the superintendent's certificate of recovery, made to, and approved by such court or judge."

I believe no injustice has been done to Thaw, or will be done to him, by depriving him of his liberty until such time as he can be discharged

by the method prescribed by law. Bearing in mind that the usual punishment for the act which led up to the detention of said Thaw is death or a long term of imprisonment, and that said Thaw escaped the consequences of such act solely by reason of his existing mental condition, I do not deem it proper to allow Thaw his freedom, suffering as he is from some form of insanity, with the possible recurrence of an attack similar to that which the jury believed he was suffering from when he killed Stanford White. In view of the existing mental condition of said Thaw, the safety of the public is better insured by his remaining in custody and under observation until he has recovered, or until such time as it shall be reasonably certain that there is no danger of a recurring attack of the delusion, or whatever it may be.

The writ is dismissed. The order remanding the said Harry K. Thaw can be settled on notice pursuant to stipulation.