---

## Ex parte THAW.

(District Court, D. New Hampshire. December 17, 1913.)

No. 86.

1. EXTRADITION (§ 37*)—RIGHT TO BAIL.

A person charged with a misdemeanor only in extradition proceedings is entitled to bail as a matter of absolute right, both under the state and federal laws, unless his enlargement on bail would be a menace to the community.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 34, 44, 48, 50; Dec. Dig. § 37.*]

2. HABEAS CORPUS (§ 117*)—QUESTION OF SANITY—DETERMINATION—RES JUDICATA—REVIEW.

Where petitioner, charged with murder, was acquitted on the ground of insanity, and committed to an insane hospital, not as a criminal, but as a person whose liberty would be a menace to the community, he was a mere ward of the state, entitled to enlargement as soon as his mental condition became such that he was no longer a menace to the public peace and safety; and hence judgments in various habeas corpus proceedings to determine the question of sanity at the time the proceedings were instituted by which he was remanded to custody were not res judi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

cata, and did not deprive him of the right to have such question re-examined in a subsequent application for bail in proceedings to extradite him after he had escaped to another state from the asylum.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 119, 120; Dec. Dig. § 117.*]

3. EXTRADITION (§ 37*)—SANITY OF ACCUSED—DETERMINATION—COMMISSION.
Where a person, committed to an insane hospital in New York, escaped therefrom and was arrested in New Hampshire, and extradition proceedings were instituted to return him to New York for alleged conspiracy to obtain his escape from the hospital, which was a misdemeanor, and he applied for bail pending the determination of the right of the demanding state to extradite him, the court had power to appoint an expert commission to determine whether his mental capacity was such at the time of the application that his enlargement on bail would not probably be a menace to the public peace.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 34, 44, 48, 50; Dec. Dig. § 37.*]

Petition of Harry Kendall Thaw for writ of habeas corpus. Commission appointed to determine whether petitioner's enlargement would be likely to menace the public.

See, also, 209 Fed. 56.

Drew, Shurtleff, Morris & Oakes, of Lancaster, N. H., and N. E. Martin, of Concord, N. H., for petitioner.

William T. Jerome, of New York City, and Bernard Jacobs, of Lancaster, N. H., for the State of New York.

ALDRICH, District Judge. Under the petitioner's motion to be admitted to bail, some appropriate method must be devised for inquiring into the public phase of the question presented. If we look to the face of the papers, it will appear that extradition is sought for a crime, declared by a New York statute to be a misdemeanor only, and not because he is an insane person escaping from custody. This reference to the nature of the charge is for the purpose of stating the present question, and not for the purpose of defining the limit or scope of inquiries to be made to specific or general questions which may possibly hereafter arise.

[1] For the purposes of the present question, therefore, we have a situation in which the right of bail exists, and the right is absolute whether viewed under the statutes of New York, the statutes of the state of New Hampshire, or the federal laws, unless liberty of the petitioner under bail would be a menace to the community. It would not be interesting to inquire into the historical oppressions or other reasons which led to making the right of bail absolute in this country, except to say that they were sufficient to warrant imperative declarations in Constitutions and statutes that persons charged with the lesser crimes shall be entitled to bail; and for putting courts and magistrates under the imperative mandate that bail shall be granted except in cases of grave crime.

The right of bail, however, is subject, like all other personal rights, to being influenced by considerations of public policy and public safety. This petitioner was put on trial some years ago charged with a high

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

crime, and was acquitted on the ground of insanity, and he was thereupon, under a New York statute, committed to the Matteawan Hospital for the Insane. As a result of these proceedings, and according to the theory of the subsequent New York cases in respect to them, the petitioner was held at Matteawan, not as a criminal, but as a person whose liberty would be a menace to the community.

[2] There is no pretense in any of the New York cases that there was any authority, under the New York law, for holding him, or suggestion of any purpose on the part of the learned judges dealing with the situation to hold him, beyond the time at which he would cease to be a person whose liberty would be a menace. Indeed, Justice Morschauser says in deciding one of the Thaw habeas corpus cases before him, referring to the verdict, and quoting the statute:

"The court must thereupon, if the defendant be in custody, and they deem his discharge dangerous to the public peace or safety, order him to be committed to the state lunatic asylum until he becomes sane."

And again:

"Until he has recovered, or until such time as it shall be reasonably certain that there is no danger of a recurring attack of the delusion, or whatever it may be." People v. Baker, 59 Misc. Rep. 359, 361, 365, 110 N. Y. Supp. 848, 849, 852.

Mr. Justice Rich, in discussing the question of the constitutionality of the statute, and, in referring to the nature of Thaw's custody and to the statute (People ex rel. Peabody v. Chanler, 133 App. Div. 159, 168, 117 N. Y. Supp. 322, 329), says:

"Both are temporary expedients, exercised for the purpose of discharging the duty the state owes the public of protection from the danger incident to permitting freedom to a person mentally deranged."

And again, referring to the duty of the state:

"It is its duty to protect the public, as well as the unfortunate himself."

And again:

"He could not be detained a moment after establishing his restoration to sanity."

And it is pointed out by the learned justice that such duty is discharged and such authority exercised under the police power of the state. Again, Mr. Justice Jenks, in the course of his opinion in the same case, says:

"Such a commitment is not for the punishment of such a defendant, for there can be no punishment for him who has been acquitted; but it is for protection for the public, made in the exercise of the police power of the state. * * * The commitment can last only so long as the defendant is insane, and he has the right at any time under the law to have his sanity determined upon habeas corpus. * * * The order of commitment settles nothing finally or conclusively against the person committed."

Indeed, Justice Mills, in the course of his opinion, and in reviewing the various proceedings, in New York, involving Thaw's mental condition, said, that the prior hearings, and quasi judicial determinations, did not operate to put the question of present mental condition under

the res judicata rule; that Thaw was only to be held until his enlargement would not be a menace to the public; that he was not in a hospital as a criminal to undergo punishment, but there to be treated with consideration and privileges, not incompatible with discipline, with the hope that he might ultimately recover.

This New York decision was in 1909; it assumes that Thaw has the right to bring as many habeas corpus proceedings as he deems necessary to protect his legal rights; and that the question of mental condition is always open under such a proceeding. The reasoning of Justice Mills not only applied to the then present mental condition, but it reaches here and includes this proceeding, and extends into the future, and its force, in effect, ordains, not that Thaw's present condition would be a menace to the public peace and safety, if he were at large, but that the question of mental condition is now open, and that this court, and all future courts, having jurisdiction, and the responsibility of the question of Thaw's mental condition, must deal with it as an open one. People ex rel. Thaw v. Lamb, Superintendent of Matteawan State Hospital (Sup.) 118 N. Y. Supp. 388.

There have thus been several hearings in Thaw's case in New York upon habeas corpus; and it is perfectly correct, I think, to say that the theory of them all is that the petitioner was held under the police power of the state during such time as his liberty would be dangerous to himself and to the community, and that they make no suggestion whatever that any finding of fact upon a question relating to danger to himself or the community is conclusive upon any issue of fact involved in any subsequent proceeding. Indeed, it would be quite consistent with the theory of the New York authorities to say that if the petitioner were in Matteawan today, and his case were under hearing in New York upon habeas corpus, the fact of sanity or insanity, of menace or no menace, of danger or no danger, would not be accepted as one concluded by any of the previous findings or adjudications. The petitioner, being thus held under the duty of protection, and under police power exercised as a temporary expedient, escaped, and was subsequently apprehended and taken into custody in this jurisdiction.

Extradition proceedings were instituted before the Governor of New Hampshire. Subsequent to custody by New Hampshire state authority, and before executive action, habeas corpus proceedings were invoked in the United States court by the person escaping from New York protection, and in his petition it was alleged, speaking generally, that he was restrained of his liberty in New Hampshire without due process of law, and in contravention of the Constitution, and he is now held in custody by virtue of the authority of such a proceeding, and, alleging himself to be a citizen of Pennsylvania, he now moves for an order of bail.

The fact of Thaw's escape, not from a custody holding and punishing him as a criminal, but from New York's jurisdiction, guardianship, and protection, and the fact of his having been found here (something for which this jurisdiction is in no way responsible), operate to transfer, temporarily at least, and until the question of the right of extradition is determined, the duty and responsibility of protecting the com-

munity and of protecting the petitioner. This jurisdiction, speaking in the extradition sense, is for the present his asylum, and the duty of determining the question of menace, arising upon the motion to be admitted to bail, rests here, and questions about it must be solved here, and they have reference, as they would if the petitioner were at Matteawan and the questions were to-day raised in the New York courts, to his present mental status; and the question in respect to menace must be accepted here, as it doubtless would be accepted in New York, as an open question, to be solved upon appropriate ascertainments made in an orderly way.

In a recent discussion arising upon this motion for bail, the general questions involved in the extradition proceeding were referred to as questions involving such difficulties that they would necessarily require time, and because the question of time has some bearing upon the question of bail; and the New York habeas corpus cases are referred to in this rescript, not only because they are deemed to be authorities of weight and entitled to deference, but because it has been urged upon me with rather extreme emphasis that they ought to be accepted as conclusive of the question of present menace involved in the broader question of public protection, a view which I do not accept, and a view which I have no reason for thinking the New York courts would accept.

Under the extradition proceeding, the claim of New York is entitled to very favorable consideration, not because of alleged insanity, but because of the charge of a misdemeanor. In this sense it is not perceived that discharging the duty and answering the responsibility of dealing with the question of danger to the public peace and safety while the petitioner is within this jurisdiction, involves any antagonism to the attitude of the New York courts, and it is certain that it involves no lack of deference to the learned New York judges who have dealt with the difficult questions involved in the cases of this petitioner.

The petitions for the writs, and the answer, or replication, of the petitioner raise certain questions, and among them:

First. That, while upon the papers extradition is sought for the crime of conspiracy to escape, the real and substantial purpose is to procure extradition for "re-confinement" in the Matteawan Hospital, and thus that there is bad faith in the extradition sense.

Second. That the case is not an extraditable one, because on the face of the papers New York is seeking to have a person extradited whom it was holding under process directed against an insane person.

Third. That, upon the face of the papers, the commitment and the entire process since the verdict of acquittal is based upon an unconstitutional statute.

It is only necessary to state these questions to show that their proper solution will require considerable time here and elsewhere. Among the points which the answer raises against the constitutionality of the New York statute is that the statute contemplates commitment upon the verdict of the jury, based upon mental condition at the time of the alleged homicide, without a trial upon the question of mental condition

at the subsequent time of commitment, and that the statute does not furnish adequate remedies for relief.

Although the constitutional question involved was determined in New York by a divided court, and although a similar statute, which was sustained by the Supreme Court of the state of Washington, was, in respect to its enforcement, declared against by the United States Circuit Court for the district including the state of Washington, and although the Supreme Court of the United States expressly left the constitutional question in that case open, it would hardly be expected that much should be done here except to hear the parties and have the record put in shape for the Supreme Court, because, ordinarily, a court of first instance, in another jurisdiction, would not assume the responsibility of discharging a petitioner under habeas corpus proceedings upon the ground that a state statute, which had been declared constitutional by the highest court of the state, was not a valid one.

The other position, which relates to the crime described, and to the person described, raises a question whether the papers describe a crime and a person within the meaning of the federal Constitution, and therefore that position is one in respect to which the responsibilities here are somewhat different.

If it be true that there is no case in this country, or in England, where a person has been extradited to a demanding state or country which had adjudged him insane, and was holding him as an insane person, for corrective purposes, at the time of his escape and flight, and if this, therefore, is a case of first instance, it will readily be seen that the question presented is one of possibly far-reaching consequences, and one which would require careful argument by counsel and careful consideration by courts having the responsibility of making proper determinations. The questions involved are stated, not for the purpose of deciding them, or making any intimations about them, but as bearing upon the question of bail, in the sense that they are questions of gravity which will properly require time.

[3] Now, what shall be done with the petitioner pending the decision of these questions? Under the law, whether his right is tested by the New York law, the New Hampshire law, or the federal law, he is entitled to bail as a constitutional or statutory right, unless his liberty under bail would be a menace to the community. The right of liberty, however, like all other rights is subject to limitations or restraints put upon it by the necessities of public peace and well-being. The question, therefore, is one of a public character, and one not necessarily to be determined in an adversary or partisan contest. How shall the question be determined here? It is supposed that here, as well as in New York, such a question might be inquired into upon a hearing before the court, with numberless partisan expert witnesses for and against, and a long drawn out trial. A master might be appointed, with power to listen to the parties and their witnesses at an adversary hearing; or a suitable nonpartisan commission might be created, to make examinations of the petitioner and observe his conduct, and, after all has been done which should be done for the public interests, to report its opinion

on the question whether his being at large under bail would jeopardize the public peace.

I prefer not to appoint a commissioner for an adversary hearing, because such a hearing would involve a revival of undesirable agitation and an unnecessary disturbance of the public mind. I prefer not to hear it myself, upon adversary expert testimony, unless it is my imperative duty to hold such a hearing, and I think it is not, at least at this stage of the proceeding.    .

This particular question, under a motion for bail, being one of a public character, at least one having a public phase, and relating to the responsibility of protection, and one into which personal rights, aside from the right of the petitioner, enter very little, if at all, I have no doubt of my authority to create a nonpartisan commission to promote a nonpartisan inquiry in the interests of the public security and welfare. I shall, therefore, create a commission in whose judgment I would have more confidence upon a question of this kind than I would in my own based upon a public adversary hearing with partisan experts, and one which I think will better answer all possible public fears.

I think the particular question involved here has reference to the present mental condition in respect to probable danger and hazard, and not to the abstract question of unsoundness or insanity. Practically speaking, a question like the one under consideration could not be determined upon that abstract question, because a person might be insane, and at the same time absolutely helpless and absolutely harmless. It is doubtless because of this view that the theory of the New York courts is, that the question of mental condition should always be treated as an open one, and that Thaw should only be held until his mental condition is such that his liberty would not be dangerous to the public.

The theory of the New York judges being that Thaw was held at Matteawan as a ward of that state, and not as a criminal for purposes of punishment for crime, and, as he stands here in this extradition proceeding charged with a misdemeanor only, and as, under the motion, the right of bail exists here as a constitutional or statutory right as it would in New York, upon a charge of a misdemeanor only, unless his liberty would be dangerous to the public, and as upon that question here, as it would be in New York if he were there charged with a misdemeanor only and moving for bail, his mental condition in respect to present danger is open to inquiry, and upon the situation here, as between him and the jurisdiction of his present asylum, it becomes a question in all essential and substantial respects one of a public character, and there should be such an inquiry into his mental condition as will satisfy all reasonable considerations of the public good.

It is thought, therefore, that a commission comprising competent and reputable nonpartisan experts will be reasonable to the petitioner, and will best satisfy public concern, if any there be.

The commission is not appointed for the purpose of listening to experts upon an adversary hearing, but for making such observations and examinations as it sees fit to make as to Thaw's present condition; and, whether he is insane or not, its opinion is sought upon the single and

sole question whether it is reasonably probable that his liberty under bail would be dangerous to the public peace and safety.

Having made such observations and examinations as the commission sees fit, it will be open to the commission, upon the question of present danger, to give all interested-parties leave to appear and offer evidence in respect to acts, if any, since his committal to Matteawan, tending to show personal violence, or any manifestations of a tendency or disposition to do physical harm. This will, of course, include the evidence of Mr. Nute, the marshal, and Mr. Drew, the sheriff, who have had the petitioner in keeping, and who have had recent opportunities to observe his conduct.

It is not intended that there should be a broad trial upon the general question of insanity, because it is not the purpose, in dealing with this particular question of public phase and menace, to embarrass any subsequent litigation where the broad question of insanity might be involved.

The theory of the New York courts being that Thaw's custody at Matteawan was not as punishment for crime, but for recovery of harmless or nondangerous mental poise, and the question here being only one of mental poise in respect to public danger, that question is the only one upon which the opinion of the commission is sought.

It is open to the commission at all times to make application for instructions, or for limitations or enlargements of the scope of the submission.

Let a commission issue to Hon. Frank Sherwin Streeter, of Concord, N. H.; Dr. Morton Prince, of Boston, professor emeritus, Tufts, College Medical School, and physician for nervous diseases Boston City Hospital; Dr. George Alder Blumer, physician in chief and superintendent, Butler Hospital for the Insane, at Providence, R. I.; and Dr. Charles Parker Bancroft, superintendent of the New Hampshire State Hospital for the Insane, at Concord, N. H.—with authority and limitations not inconsistent with the suggestions contained in this rescript.

When the report comes in, the parties may have leave to be heard further on the question of bail.