PEOPLE ex rel. THAW v. GRIFENHAGEN, Sheriff, et al.

(Supreme Court, Special Term, New York County.  April 23, 1915.)

1. HABEAS CORPUS ⬯90—JURY ⬯19—TRIAL—DISCRETION OF COURT.

On habeas corpus to obtain his discharge from a state hospital for the criminal insane, relator was not entitled as of right to have the issue of his present sanity or insanity tried by a jury; but the court, in its discretion and for the information of its conscience, might order such issue to be heard by a jury.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80;  Dec. Dig. ⬯90;  Jury, Cent. Dig. §§ 104–133;  Dec. Dig. ⬯19.]

2. HABEAS CORPUS ⬯90—PROCEEDINGS—HEARING AND DETERMINATION— "IN A SUMMARY WAY"—"COURT."

Under Code Civ. Proc. § 2039, providing that a prisoner, produced upon the return of habeas corpus, may under oath deny the return, or allege facts showing that his detention is unlawful, or that he is entitled to his discharge, whereupon the court or judge must proceed in a summary way to hear the evidence and dispose of the case; section 2066, providing that, except as otherwise expressly prescribed by statute, the article shall regulate proceedings on habeas corpus; and section 2068, providing that, except where special provision therefor is otherwise made, mandamus can be granted only at a Special Term of the Supreme Court wherein the issue of fact is triable as prescribed in the article—the words "in a summary way" mean simply without ceremony or delay, and do not prohibit the determination of the issues of fact with the aid of a jury, since the interests of the public and of the petitioner require promptness, and since a "court," as distinguished from a judge, may consist of the judge and a jury.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80;  Dec. Dig. ⬯90.

For other definitions, see Words and Phrases, First and Second Series, Court.]

3. HABEAS CORPUS ⬯90—PROCEEDINGS—ISSUE OF INSANITY.

Code Civ. Proc. § 2039, provides that a prisoner, produced on return of a writ of habeas corpus, may under oath deny any material allegation of the return, or allege facts showing either that his detention is unlawful, or that he is entitled to his discharge, whereupon the court or judge may proceed in a summary way to dispose of the case; and section 2066 regulates the proceedings on the return of a writ of habeas corpus, except as otherwise prescribed by statute, and in so far as the provisions of the article are applicable in any case therein provided for.   Insanity Law (Consol. Laws, c. 27) § 93, provides that one in custody as an insane person may have a writ of habeas corpus on proper application, on return of which the fact of his insanity shall be determined upon evidence as to his medical history and of the superintendent or officer in charge of the institution wherein he is in custody.   Held, on the return of a writ of habeas corpus entitling the relator, who had been committed to a state hospital for the criminal insane, to a trial of the question whether he was then sane or insane, that the provisions of the Code and of the Insanity Law applied to distinct classes of cases, and were mu-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tually exclusive, and that the proceeding was governed by the Insanity Law, as one of the cases otherwise expressly provided for by statute.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80; Dec. Dig. ☞90.]

4. HABEAS CORPUS ☞90—PROCEEDING—ISSUE OF SANITY—JURY TRIAL—DISCRETION OF COURT.

Relator in 1907 was tried for murder before a jury, and pending the trial a commission reported that he was insane, and on retrial in 1908 he pleaded insanity, and was found not guilty on the ground of insanity when the act charged was committed, and was then committed to a state asylum for the criminal insane "until thence discharged in due course of law," and upon two applications for habeas corpus in 1908, one in 1909, and another in 1912, was adjudged still insane, and in 1913 in a judicial proceeding was adjudged not a lunatic, and in the same year was found by a commission not to be insane and not dangerous to be at large. *Held*, on application for habeas corpus to try the issue of his present sanity, that in view of the history of the case the court would refer the issue to a jury, whose finding, however, might be disregarded by the court.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 80; Dec. Dig. ☞90.]

5. HABEAS CORPUS ☞120—REFUSAL TO DISCHARGE—RES JUDICATA—SANITY.

The disposition of prior writs of habeas corpus, sought to liberate a person acquitted of murder because of insanity, on the ground that he was then sane, was not res judicata of the issue of the petitioner's insanity on a subsequent hearing of a new writ for similar relief.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 121; Dec. Dig. ☞120.]

Habeas corpus by the People, on the relation of Harry K. Thaw, against Max S. Grifenhagen, as Sheriff of the County of New York, and John J. Hanley, Warden of the City Prison. Relator's motion to impanel a jury granted.

See, also, 168 App. Div. 553, 153 N. Y. Supp. 188; 215 N. Y. 339, 109 N. E. 486.

Abel I. Smith, Jr., of New York City, pro se.
Abraham S. Gilbert, of New York City, for defendant.
John J. Hanley, of New York City, pro se.
Egburt E. Woodbury, Atty. Gen., pro se.
William F. Schnieder, of New York City, pro se.

HENDRICK, J. This is an application on the return of a writ of habeas corpus for a trial by jury of the question of fact whether or not Harry K. Thaw is insane at the present time.

[1] The motion is addressed to the discretion of the court, and it is not claimed by counsel for the relator that Thaw is entitled to a jury trial in this proceeding as a matter of right. The opposition to the motion on behalf of the people of the state, represented by the Attorney General and the district attorney of this county, rests on the contention that the court has no power to order a jury trial of the issues of fact in a habeas corpus proceeding, and therefore the court has no discretion in the premises which it may exercise. It is also urged that, if it be held the court has power in its discretion to order a jury trial, that discretion should not be exercised in favor of this relator. In support of the contention of the people as to want of

power it is claimed that the statutory provisions relating to habeas corpus prohibit the court from impaneling a jury to assist and advise it in a decision of the issues involved. It is also claimed, as is stated by the Attorney General and the district attorney in their brief, that they are "unaware of a single case in this state in which a jury trial has been ordered in a habeas corpus proceeding."

The answer to this latter contention of the Attorney General and of the district attorney is that there have been several cases in this state in which a jury trial has been ordered to determine questions of fact in habeas corpus proceedings. In this very First department, in the habeas corpus proceeding entitled People ex rel. Bebro v. Matteawan Insane Asylum and John Doe, this court on June 4, 1906, entered an order as follows:

"Ordered that the question of fact in respect to the alleged insanity of the said James P. Haughey arising on the issues herein presented be tried by a jury. Further ordered that the question to be tried by the jury be and the same hereby is stated as follows: 'Is the said James P. Haughey now insane?' "

On this order a jury was impaneled and the question of Haughey's sanity was tried before a jury. On the same day another order was entered directing that the issue of the sanity of Patrick Cowen be tried with the aid of a jury upon the return of a writ of habeas corpus. These orders were granted by the late Justice Bischoff.

The case of People v. Burns (1894) 77 Hun, 92, 28 N. Y. Supp. 300, affirmed without opinion in 143 N. Y. 665, 39 N. E. 21, was an appeal from an order of the Supreme Court denying the application of one James Burns for his discharge upon the return of a writ of habeas corpus. In that case the lower court impaneled a jury and submitted to it the question of fact put in issue by the traverse to the return. The Appellate Division of the Fifth Department, Presiding Justice Dwight writing for the court, said:

"He was before the court on a writ of habeas corpus granted on his own application, and he thereby submitted to the court the whole question of his right to a discharge or his liability to a recommitment. * * * The only question of fact was of the violation of the condition mentioned. In determining that question the court, though possibly not required to do so, might at least with great propriety take the verdict of a jury drawn, as was done, from the panel of jurors summoned and in attendance at the term."

In Matter of Dixon, 11 Abb. N. C. 118, a writ of habeas corpus was issued on behalf of an inmate of a lunatic asylum to procure his discharge on the ground that he had become sane. In this case the court per Potter, J., said:

"I do not doubt that it is the appropriate office of the writ of habeas corpus, however legal and proper the confinement may have been at its beginning, and while the patient was insane, to restore the patient to his liberty and to society, when his sanity is established. No more appropriate or different remedy has been suggested by the respondent, and none occurs to the court. * * * The tribunal who gave the certificate of insanity in this case was only competent to imprison for and during the insanity. When the insanity ceases, the power to longer detain the patient ceases. Has the insanity ceased? That is alleged and denied in the papers before the court, and I am unwilling to decide that question upon the evidence before me. That

question should be tried by a jury, or the court should be furnished with more evidence through a reference."

The case of People ex rel. Morrell v. Dold, 189 N. Y. 546, 82 N. E. 1131, is cited with approval in Sporza v. German Sav. Bank, 192 N. Y. 8, 84 N. E. 406. The facts in the Dold Case, as stated by Haight, J. (192 N. Y. 20, 84 N. E. 410) are as follows:

"The relator obtained a writ of habeas corpus to procure his release from River Crest Sanitarium, in which he was confined as an insane person, upon the ground that he was committed to the sanitarium without notice. The defendant made return thereto to the effect that the relator was insane at the time he was committed to the sanitarium and that he was still insane. A traverse was interposed to this return, and thereupon the defendant asked that a jury be impaneled to try the question of the relator's present insanity. This the relator opposed, and declined to submit to a trial by jury, and thereupon the Special Term overruled the traverse, and dismissed the writ, and remanded the relator to the custody of the sanitarium."

The order dismissing the writ in the Dold Case recites the offer of a jury trial as follows:

"And the offer having been duly made that issues be framed to be submitted forthwith to a jury for the purpose of determining the sanity of the relator, which offer was declined by the attorney, L. F. Fish, Esq., and the said counsel for the relator and the said justice having thereby, after due deliberation, directed that the said traverse and plea be overruled," etc. Printed papers in the Dold Case, Cases in the Court of Appeals, vol. 2554.

Within the past two weeks in a habeas corpus proceeding (People ex rel. Cornelius Sullivan v. Elliott, no opinion filed) Mr. Justice Benton, of this court, sitting in Steuben county, ordered a jury trial to determine the issue raised by the pleadings whether Sullivan, who is an inmate of the Willard State Hospital at Willard, N. Y., is sane at the present time.

It is therefore evident that in this state there is ample precedent for the impaneling of a jury to aid in trying the issues of fact raised upon the traverse to the return in a habeas corpus proceeding. Not only do the above-cited cases in this state lead to the conclusion that it is within the discretion of the court to impanel a jury to aid the court in its decision of the question of fact, but the text-book writers and cases in other jurisdictions also fortify the contention of the relator that the court has power to exercise discretion in this regard.

Church, in his work on Habeas Corpus (2d Ed., § 173), says:

"A trial by jury cannot be demanded by a prisoner or respondent in a habeas corpus proceeding as a matter of right; * * * but the court or judge sitting on the return to a writ of habeas corpus may, in his discretion, order any controverted fact in the matter to be tried by a jury."

In Graham v. Graham, 1 Serg. & R. (Pa.) 330, the court says:

"The Habeas Corpus Act authorizes the court to decide both fact and law; but it has been the practice in the common pleas to direct an issue for trial of facts on doubtful cases."

In Republica v. Goaler, 2 Yeates (Pa.) 258, the court, in a habeas corpus proceeding, said:

"On a habeas corpus we are called on to examine into the facts relating to the case (2 Dall. St. Laws, 246, § 13), and must in some instances necessarily determine contested facts. If we had any doubt whether the true person was arrested, we should hold ourselves bound to submit the matter to a decision by jury."

Further, the question of the power of the court to order a trial of the question of fact of the insanity of Thaw has been passed upon in this very court. In the habeas corpus proceeding before Mr. Justice Mills (People ex rel. Peabody v. Chanler) the question of the discretionary power of the court was raised by this respondent and contested before that justice, who decided that the court had the power in its discretion to submit the issue of present sanity to a jury trial. The motion for a jury trial was denied, for the reason that in his opinion the facts at that time did not warrant the exercise by him of the discretionary power which he held he possessed.

From the printed papers on appeal to the Court of Appeals it appears that this question was specifically presented by motion at the opening of the proceedings as follows:

"Mr. Bartlett: Second. We move your honor that a jury trial be granted to Harry K. Thaw as a matter of judicial discretion on the ground that such judicial discretion in his favor should now be exercised.

"The Court: That motion I also deny for the reasons which I have already expressed and are a part of the record" (folio 92).

Other motions, not material here, were made for the discharge of Thaw under the writs, and were denied. The same motions were made on a former hearing, and the same rulings were made, whereupon the court made its decision (folios 103 to 120), from which I quote so much as is here applicable:

"Now we come to the next question, and that is this: Has the court in this proceeding the power in its discretion to grant a jury trial of the issue of Thaw's present sanity?" (folio 108).

After discussing briefly that question, the court continued:

"I conclude to hold that the court has the power in its discretion to submit this issue of the present sanity raised by these pleadings, return, and traverse to a jury trial."

The Appellate Division of the Second Department (133 App. Div. 159, 117 N. Y. Supp. 322, affirmed 196 N. Y. 525, 89 N. E. 1109, 25 L. R. A. [N. S.] 946), in reviewing the proceedings on that habeas corpus, sustained the action of Mr. Justice Mills in dismissing the writ and remanding the prisoner, Thaw. Mr. Justice Rich in his concurring opinion said:

"From the order accordingly entered this appeal is taken, and three questions are presented for our consideration and determination: First. * * * Second. * * * Third. Did the Special Term err in denying the relator's motion for a trial by jury, either as matter of right or of discretion?"

After discussing the two first questions, he continued:

"I am unable to find any authority under which Thaw was entitled to have the question of fact as to his sanity or insanity tried by the jury as a mat-

ter of right. The discretion of the learned justice at Special Term was properly exercised, and it follows that the order must be affirmed."

I am of opinion that there is ample precedent and authority to order the issue of fact to be heard by a jury for the information of the conscience of the court.

[2] It is further argued by the Attorney General and the district attorney that sections 2039 and 2066 of the Code of Civil Procedure prohibit the determination of the issues of fact with the aid of a jury; they arguing that section 2068 makes section 2039 exclusively applicable to this case, and that section 2039, inasmuch as it directs that the court or judge "must proceed in a summary way to hear the evidence," deprives the court of the power to impanel a jury.

The words "in a summary way" in this section mean simply "without ceremony or delay." 37 Cyc. 532. "Proceedings in habeas corpus are to be disposed of in a summary way. The interests of both the public and the petitioner require promptness—that, if he is unlawfully restrained of his liberty, it may be given to him as speedily as possible; that, if not, all having anything to do with his restraint be advised thereof, and the mind of the public be put at rest, and also that, if further action is to be taken in the matter, it may be taken without delay." Storti v. Massachussetts, 183 U. S. 138, at page 143, 22 Sup. Ct. 72, 46 L. Ed. 120, commenting on section 761 of the federal Revised Statutes, which require, as does section 2039 of the Code of Civil Procedure, that a proceeding of habeas corpus must proceed in a summary way to determine the facts, etc.

The purpose of the writ of habeas corpus and the purpose of the provision that the issues of fact presented to be tried in a summary way is to enable a person unlawfully deprived of his liberty to have a speedy determination of the matter without delay. The words "in a summary way" have no application to the mode in which a speedy determination should be arrived at, but look solely to the end that the questions be expeditiously resolved. This provision is for the benefit of the person who claims to be illegally detained, so that he may be quickly delivered from an illegal confinement, and there is no reason why the determination of the questions of fact may not proceed in as summary a way with the aid of a jury as it might without one. In any event, the provision that the court proceed in a summary way, being for the benefit of the relator, may be waived by him. It should be borne in mind, in endeavoring to arrive at the intent of the Legislature as expressed in this section, that power is given, not only to a judge, but also to the court, to determine the question of fact in a summary way, and a court, as distinguished from a judge, may consist of a judge and jury.

In conclusion, on this branch of the contentions of the people, I may say that neither the Attorney General nor the district attorney has cited any case in the state of New York, nor have I been able to find one, where the courts of this state, or any judge, has held that the court has no power to try the issues of fact in a habeas corpus proceeding with the aid of a jury.

[3] Thus far I have examined the question presented on the assumption of counsel for the people that this proceeding is governed exclusively by section 2039 of the Code of Civil Procedure. As a matter of fact section 2039 does not exclusively regulate this proceeding. Section 2066 of the Code of Civil Procedure provides that section 2039 of the Code of Civil Procedure shall regulate the proceedings on the return of a writ of habeas corpus, "except as otherwise prescribed by statute," and in so far as the provisions of the article "are applicable in any case therein provided for." Section 93 of the Insanity Law provides as follows:

"Any one in custody as an insane person is entitled to a writ of habeas corpus, upon a proper application made by him or some friend in his behalf. Upon the return of such writ, the fact of his insanity shall be inquired into and determined. The medical history of the patient, as it appears in the case book, shall be given in evidence, and the superintendent or medical officer in charge of the institution wherein such person is held in custody, and any proper person, shall be sworn touching the mental condition of such person. Where a second or subsequent application is made for the discharge from custody of the same patient, any party to the proceeding may introduce .in evidence any testimony, in relation to the mental condition of such patient, received upon any former hearing or trial, together with all the exhibits introduced in evidence upon such hearing or trial in connection with such testimony without calling the witnesses who gave such testimony, such evidence to have the same force and effect as if such witnesses had been called."

This section of the Insanity Law clearly applies to this case, and it is one of, the cases referred to in section 2066 of the Code as a case "otherwise expressly provided for by statute," and is not a case to which section 2039 of the Code is applicable, nor is it "a case therein provided for." The section which applies exclusively to insanity cases provides that upon the return of, the writ the fact of the prisoner's sanity shall be inquired into. There is no direction of the manner in which the inquiry shall be made, nor is there any suggestion that it shall be made in a summary way. Indeed, the section prescribes certain modes of proof and requires certain evidence to be admitted, which requirements indicate that the Legislature intended the trial to be thorough and exhaustive. It would seem that its intended effect cannot be given to the section under discussion, if that section is restricted by the narrow construction of section 2039 of the Code for which counsel for the people contend. Even the phraseology differs widely in the two sections. In section 2039 of the Code the relator is spoken of as the "prisoner"; in section 93 of the Insanity Law he is spoken of as ".a person in custody as an insane person."

I believe that section 2039 of the Code and section 93 of the Insanity Law apply to distinct classes of cases and are mutually exclusive. It must be borne in mind that in this proceeding before me, Thaw is entitled to a trial of the question whether or not he is now insane, irrespective of, the question whether or not the court has power to impanel a jury to aid it in its determination, and in either event such a trial must be had. I am of the opinion that the

court has the power, in its discretion, to call in a jury to aid it in resolving the question of fact presented by the pleadings.

[4, 5] The question remains whether or not the court should, in this particular case, exercise the discretion which I have held it to possess in favor of the request of the relator that a jury be ordered. A brief history of the proceedings in relation to Thaw will aid in determining how that discretion should be exercised. On January 23, 1907, Thaw was placed on trial for the murder of Stanford White before Mr. Justice Fitzgerald and a jury. During the progress of the trial the district attorney moved for the appointment of a commission to inquire into the then mental condition of Thaw. The commission was appointed and submitted its report, which concluded:

"Upon all the facts, it is our opinion that at the time of the examination the said Harry K. Thaw was, and is, sane, and was not, and is not, in a state of idiocy, imbecility, lunacy, or insanity, so as to be incapable of readily understanding his own condition, the nature of the charges against him, and in conducting his defense in a reasonable manner."

Thereafter the trial continued and the jury disagreed. In January, 1908, Thaw was again placed on trial before Mr. Justice Dowling and a jury, and pleaded insanity as a defense. The verdict of the jury was:

"Not guilty, upon the ground of defendant's insanity at the time of the commission of the acts charged in the indictment."

Thereupon he was committed to the State Asylum for the Criminal Insane at Matteawan, the order of the commitment concluding:

"There to be kept in said hospital until thence discharged by due course of law."

In May, 1908, Thaw sued out a writ of habeas corpus, which was heard before Mr. Justice Morschauser, who said:

"I am satisfied from the evidence adduced before me that the mental condition of Harry K. Thaw has not changed, and I find that he is now insane." People ex rel. Peabody v. Baker, 59 Misc. Rep. 359, 110 N. Y. Supp. 848.

In June, 1908, Thaw again procured a writ, which was heard before Mr. Justice Mills, who dismissed the writ and remanded the prisoner to Matteawan Asylum. The proceedings on and the disposition of this writ, and the decision of Mr. Justice Mills and of the Appellate Division, Second Department, and of the Court of Appeals are hereinbefore referred to at length. In June, 1909, Mr. Justice Mills again entertained a writ, and, after a hearing thereon, held Thaw to be insane, and dismissed the writ.[1] In June, 1912, Thaw again sued out a writ of habeas corpus to try the question of his insanity, which was heard before Mr. Justice Keogh, who held Thaw to be "still insane," and an order was entered to the effect that Thaw was not yet recovered.

In November, 1913, in a proceeding in the orphans' court of Pittsburgh, Pa., three physicians were appointed upon the petition of the trustee of the estate of Harry K. Thaw for an adjudication that

[1] People ex rel. Thaw v. Lamb (Sup.) 118 N. Y. Supp. 389.

Thaw was a lunatic and was not to be intrusted with the handling of funds then due him.   Upon the report of the physicians, the court held that Thaw was not a lunatic and dismissed the petition. In December, 1913, in the United States District Court for the District of New Hampshire (Ex parte Thaw [D. C.] 209 Fed. 954), District Judge Aldrich, on an application for bail, pending extradition proceedings, held that Thaw was entitled to bail as a matter of right unless his enlargement on bail would be a menace to the community.   The court appointed a commission to determine that question.   The conclusion of that commission was as follows:

"Whatever may have been the mental condition of Harry Kendall Thaw at the time of the homicide, upon which question we express no opinion, he is not now suffering from any of the forms of mental disease alleged by the prosecution at the time of the trial or subsequently thereto, namely, maniac depressive insanity, paranoia, dementia præcox, or delusional insanity.   In our opinion it is reasonably probable that Harry Kendall Thaw's liberty under bail would not be dangerous or a menace to public peace or safety."   Transcript of Record, Drew v. Thaw, in the Supreme Court of the United States, page 180.

In the April following Judge Aldrich granted Thaw's writ of habeas corpus (Ex parte Thaw [D. C.] 214 Fed. 423), but suspended his discharge pending an appeal.   The motion for bail was left undetermined, but he accepted the report of the commission, saying at page 444:

"I accept the report of the commission, based as it was upon nonadversary investigation and examination and upon proofs of absence of indications of personal violence since commitment to Matteawan, supplemented by my own observation of the man at the several hearings, as sufficiently establishing nondangerous mental condition so far as it is involved in the question of bail, and that any supposed danger to the community through liberty under bail is so remote as not to warrant his being deprived of liberty on bail upon that ground."

From that time until his return to New York by reason of the final determination of the extradition proceedings Thaw was practically at liberty in the state of New Hampshire.   It cannot be claimed that the disposition of prior writs of habeas corpus, sought to liberate a person acquitted of murder because of insanity on the ground that he was then sane, is res adjudicata of the issue of the petitioner's insanity on a subsequent hearing of a new writ for similar relief. People v. Lamb, 118 N. Y. Supp. 389.   It should be borne in mind that Thaw is not confined as a criminal, or as a punishment for crime. He has been acquitted of the crime with which he was charged, and there can be no punishment for one who has been acquitted.   He is confined in a state hospital for the insane as a precaution for the public; his confinement resulting from the exercise of the police power of the state, which permits the restraint of an insane person who at large would be a danger to the peace and safety of the public. The commitment can last only so long as he is insane, and he has the right at any time, under the law, to have his sanity determined upon habeas corpus.   People ex rel. Peabody v. Chanler, 133 App. Div. 159, 117 N. Y. Supp. 322.

In view of the different conclusions reached in the various judicial proceedings heretofore had, I think the time has come when the question of Thaw's sanity should be determined by the court with the aid of a jury of 12 men who are not lawyers or doctors, but who are called from the various walks of life to aid the court by their advice in the determination of a question of fact. In any event, the finding of the jury is not binding on the court, and if, after the verdict of the jury, the court is not satisfied that its finding is in accordance with the evidence and with justice, the court may disregard the same and render its own decision as if a jury had not been invoked.

There is no force to the suggestion that the impaneling of a jury in this case will be a precedent in other cases. The discretion always remains with the court or the judge to grant or refuse a jury. In following the sound judicial policy which has prevailed heretofore in this state, a jury trial will not ordinarily be granted to try the issues of fact in a habeas corpus proceeding. A jury will be called in to aid the conscience of the court only in cases which present material extraordinary circumstances, and I am of opinion that this is such a case, as is evidenced by the mere recital of the various proceedings, with their results, which have been taken to test Thaw's sanity in various jurisdictions, as hereinbefore pointed out.

The relator's motion to impanel a jury to aid the court in determining the questions of fact arising upon the pleadings is granted.