Martin B. Stecher, J.
Ronald McNelly is 23 years old. On December 20, 1973, at the premises of a well-known restaurant in New York City, he drew a pistol and fired at the head waiter, at three policemen who came to subdue him and did considerable property damage. Nobody but McNelly himself was injured and he not seriously.
He was indicted on January 16, 1974 for crimes arising from the shooting and possession of a weapon. By order of the court dated February 5,1974, it was determined "that the said defendant as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense” and he was "adjudicated an incapacitated person” (but not a dangerous incapacitated person, CPL 730.10, subd 9) and was committed to the custody of the Commissioner of Mental Hygiene for care and treatment.
On April 19, 1974, the director of Mid-Hudson Psychiatric Center certified to the court that McNelly was sufficiently *264 recovered "to understand his charges, expound upon them, and establish collaborative relationships with both staff and the rest of the patient population.” The director concluded that McNelly was "fit to proceed”. On April 30, 1974 an order to such effect was entered.
The defendant has pleaded not guilty to the indictment asserting that "as result of mental disease or defect he lack[ed] substantial capacity to know or appreciate either: a) the nature and consequence of such conduct; or b) that such conduct was wrong” (Penal Law, § 30.05). After trial without a jury, I find that, at the time of the incidents alleged in the indictment, Ronald McNelly, as a result of mental disease and defect, lacked substantial capacity to know or appreciate the nature and consequence of his acts or that the conduct described in the indictment was wrong. He is, therefore, not guilty of any of the crimes charged in the said indictment.
A literal reading of the provisions of CPL 330.20 obligates me to commit the defendant, forthwith, to the custody of the Commissioner of Mental Hygiene to remain in a State institution designated by the commissioner until either the commissioner concludes that McNelly "may be discharged or released on condition without danger to himself or to others” and makes application therefor to the court (which shall then appoint examining psychiatrists, hold a hearing and make an appropriate decision); or the defendant himself makes application to the court and proves that he is entitled to be released. Presumably, the defendant’s retention by the commissioner is always subject to review on a writ of habeus corpus. No other review is spelled out in the statute.
The defendant attacks the statute as denying him due process of law in that it provides for deprivation of his liberty without even a hearing (Boddie v Connecticut, 401 US 371, 377); and as denying him equal protection of the laws in that persons escaping criminal liability because of mental disease suffered at the time the acts were committed are subject "to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses” (Jackson v Indiana, 406 US 715, 730).
CPL 330.20 (subd 1) (requiring commitment to the commissioner’s custody "[ujpon rendition of a verdict of acquittal by reason of mental disease or defect”) "has been on the statute books for many years, the other subdivisions having been *265 added in 1960” (People v Lally, 19 NY2d 27, 30); but no court may enforce the statute as written (Baxstrom v Herold, 383 US 107; People v Lally, supra). It is regrettable that, except for the recent amendment to subdivision 6, the Legislature has not seen fit to amend the statute to conform to constitutional requirements, leaving each Judge to refashion the statute under the guise of interpretation to preserve its constitutionality (Matter of Bell v Waterfront Comm. of N. Y. Harbor, 20 NY2d 54, 62; Redlich v Capri Cinema, 43 AD2d 27, app dsmd 33 NY2d 974; cf. People v Lally, supra, p 35). We proceed in that fashion.
The defendant contends that to commit him to the commissioner’s custody now, without proof of current "mental disease or defect” and without a hearing, simply because he suffered such disability one and one-half years ago is a denial of due process as well as a denial of equal protection of the laws. He further contends that procedures for dealing with persons of this class need not be standardized, but the court may look at available evidence to determine whether any commitment at all is warranted. The evidence upon which he relies is that he has been out of all institutions, on bail, for more than a year without incident; that he is undergoing chemotherapy (five milligrams Stelazin twice daily) and psychotherapy (twice monthly); and that his psychotherapist is of the opinion, expressed in a recent letter, that "any disruption of that treatment and any hospitalization or institutionalization might be extremely harmful to him at this time * * * The present diagnosis is schizophrenia, chronic undifferentiated. His prognosis is fair, provided that we are able to maintain the current level of individual psychotherapy and chemotherapy.”
The statute (CPL 330.20) mandates the participation of the Commissioner of Mental Hygiene in the adjudication process; and although the court, as indicated above, may interpret the statute to remedy constitutional deficiencies, the court "may not enlarge the wording of a statute even in favor of what may be deemed an equitable construction” (Matter of State of New York v Parker, 38 AD2d 542, affd 30 NY2d 964) for any purpose beyond preserving constitutionality. Assuming the persuasiveness of the evidence, the court may not amend the statute to adjudicate McNelly’s status without the commissioner’s aid; and the application for release, now, from further restraint or supervision is denied.
*266 The contention that commitment now to the custody of the commissioner without prior adjudication of need therefor is a denial of equal protection of the laws is without merit. The Mental Hygiene Law contains numerous authorizations for involuntary hospitalization for examination prior to judicial intervention. A person may be admitted on the certification of need by two physicians (Mental Hygiene Law, § 31.27); on certificate of a director of community services or his designee (Mental Hygiene Law, § 31.37); on the certification of a single physician on the staff of the admitting hospital (Mental Hygiene Law, § 31.39); on the application of certain peace officers in what appear to them to be "emergencies” (Mental Hygiene Law, § 31.41); or upon request made to the director of community services by close family members of the patient, or by a physician or a peace officer (Mental Hygiene Law, § 31.45). Obviously, where need appears to exist, a brief period of hospitalization for the purposes of examination is no invasion of a patient’s constitutional rights. A "finding of a reasonable doubt as to defendant’s sanity at the time of the offense provides sufficient warrant for further examination” (Bolton v Harris, 395 F2d 642, 651).
Some of the difficulty is semantic, the word "commitment” (CPL 330.20, subd 1) carrying with it a concept of indefinite duration. Clearly, such commitment without hearing or proof of necessity would be an unconstitutional invasion of McNelly’s rights, particularly where such safeguards are available in all other involuntary hospitalizations (Baxstrom v Herold, 383 US 107, 112, supra). " 'Baxstrom * * * might be said to require the conclusion that, while prior criminal conduct is relevant to the determination whether a person is mentally ill and dangerous, it cannot justify denial of procedural safeguards for that determination’ ” (United States ex rel. Schuster v Herold, 410 F2d 1071, 1081, cert den 396 US 847).
The "commitment” called for by subdivision 1 of the statute (CPL 330.20) has been stated to mean commitment "for detention, examination and report as to his sanity” (People v Lally, 19 NY2d 27, 33, supra), and I therefore interpret the statute as requiring the commissioner to detain McNelly only so long as shall be reasonably necessary to examine him and to report his findings to the court (Bolton v Harris, supra; Ragsdale v Overholser, 241 F2d 943, 948).
What is the nature of the examination which the commissioner or his designee shall make and concerning which it *267 shall report? The only standard contained in the statute (CPL 330.20) is whether the patient "may be discharged or released on condition without danger to himself or to others.” The Court of Appeals (People v Lally, supra, p 33) has expanded that to include a "report as to his sanity.” The defendant contends that equal protection is denied by the use of such standards, for others alleged to be mentally ill may be involuntarily detained if they are found to be "mentally ill and in need of involuntary care and treatment” (Mental Hygiene Law, §§31.27, 31.31, 31.33). Mentally ill and "in need of involuntary care and treatment” is defined to mean "that a person has a mental illness for which care and treatment as a patient in a hospital is essential to such person’s welfare and whose judgment is so impaired that he is unable to understand the need for such care and treatment” (Mental Hygiene Law, § 31.01).
The Mental Hygiene Law does not recognize this as the sole standard for detention. Under appropriate circumstances, it authorizes the involuntary admission to a mental hospital of "any person who * * * has a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others” (Mental Hygiene Law, §§ 31.37, 31.39, 31.41, 31.45). "Likelihood of serious harm” is further defined as:
"(1) substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or
"(2) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm” (Mental Hygiene Law, § 31.37, subd [a]). Similar distinctions are made elsewhere in the law (cf. CPL 730.10, subd 9).
It is apparent that not all civil commitments are made based on a single standard of mental illness; nor is there any requirement that under the unique facts of acquittal of crime by reason of mental disease or defect a standard for commitment must be used identical to a standard used in other, noncriminal cases. "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made” (Baxstrom v Herold, 383 US 107, 111, supra).
*268 Here, McNelly seriously endangered the lives of four people and the Legislature has imposed on the court, which acquitted him by reason of insanity (CPL 330.20, subd 2), the duty to see that reasonable precaution be taken so that others shall not be further endangered by this young man. Accordingly, the purpose of the examination and the nature of the report shall be to determine whether Ronald McNelly is presently afflicted with such mental illness, mental disease or mental defect "which is likely to result in serious harm to himself or others” (as that phrase is defined in Mental Hygiene Law, § 31.37, subd [a]) and whether Ronald McNelly may be discharged from custody or released on condition without danger by reason of mental disease or defect, to himself or others and whether or not he is mentally ill and "in need of involuntary care and treatment” (Mental Hygiene Law, § 31.27; People v Lally, 19 NY2d 27, 35 supra; United States ex rel. Schuster v Herold, 410 F2d 1071, 1084, supra). Such report shall be given to me, to the patient, his attorney, his family, the Mental Health Information Service, the Attorney-General and the District Attorney of New York County, not later than June 30, 1975.
Ronald McNelly shall be committed forthwith to the custody of the Commissioner of Mental Hygiene of the State of New York at Meyar-Manhattan Psychiatric Hospital, 600 East 125th Street, Wards Island, New York, Dr. A. Anthony Area, director, an institution designated by the commissioner for that purpose where he shall be detained and examined and a report made in accordance with the terms of this order. On written certification by his attorney of his surrender to that institution, his bail shall be exonerated. The commissioner shall comply with the provisions of section 31.29 of the Mental Hygiene Law.
If the commissioner is of the opinion that McNelly should continue to be detained either as a person having a mental illness, mental defect or mental disease which is likely to result in serious harm to himself or others or otherwise under the terms of this order, he shall, in accordance with the procedures for "court authorization to retain an involuntary patient” (Mental Hygiene Law, § 31.33), petition for the retention of the patient. Similarly, if he is of the opinion that McNelly should be discharged from custody or released on condition without danger to himself or others, he shall petition for such discharge or release in his report (CPL 330.20, *269 subd 2). The petition for retention or the petition for discharge or release shall accompany the report and be made returnable before me on July 9, 1975, at which time, of course, McNelly shall likewise be produced. Copies of the petition shall be distributed to the persons entitled hereunder to a copy of the commissioner’s report.
As was indicated above, the teaching of Jackson v Indiana (406 US 715, supra); United States ex rel. Schuster v Herold (410 F2d 1071, supra); People v Lally (19 NY2d 27, supra) and Baxstrom v Herold (383 US 107, supra), as well as of the appellate decisions of other States (cf. People v McQuillan, 392 Mich 511) requires that all of the procedural safeguards available to a respondent in a noncriminal case be made available to those who have committed crimes or have been acquitted of crime by reason of insanity. It is not required that the procedures be identical so long as variation is reasonably required by variation in circumstance. This order has been fashioned with those principles in mind. Subsequent proceedings shall, of course, be governed by the same principles which need not be spelled out here. The court is indebted to counsel for their thorough preparation and able presentation of the issues.