THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARTIN HENIG, Respondent, v COMMISSIONER OF MENTAL HYGIENE et al., Appellants.

First Department, March 24, 1977

*Thomas P. Dorsey* of counsel (*Samuel A. Hirshowitz* and *Anne Marsha Tannenbaum* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellants.

*Ronald N. Gottlieb* (*June Resnick German* and *Michael Ambrosio* with him on the brief), for Director, Mental Health Information Service, *amicus curiae.*

NUNEZ, J. On January 8, 1970, petitioner fatally stabbed his girl friend, nine months pregnant. He was found to be a dangerous incapacitated person lacking the capacity to understand the criminal proceedings and assist in his own defense and was hospitalized in a mental institution. In March, 1973 he was pronounced fit to proceed. (CPL 730.00, subd 2.) In June, 1973 he was released on bail pending trial. In November, 1975 he was acquitted by reason of mental disease or defect. Petitioner has remained unhospitalized.

CPL 330.20 (subd 1) provides "upon rendition of a verdict of acquittal by reason of mental disease or defect, the court must order the defendant to be committed to the custody of the commissioner of mental hygiene to be placed in an appropriate institution". Petitioner commenced this proceeding to require, prior to commitment to respondent's custody, an examination as to his present mental state and to have the examination conducted on an out-patient basis. The court below granted the petition, finding CPL 330.20 (subd 1) violative of petitioner's constitutional rights. Leave to appeal was granted by a Justice of this court pursuant to CPL 460.15.

*People v Lally* (19 NY2d 27) held constitutional the predecessor statute to CPL 330.20 (subd 1). That court said (p 33) "[w]e see no reason why a man who has himself asserted that he was insane at the time the crime was committed and has convinced the jury thereof should not in his own interest and for the protection of the public be forthwith committed for detention, examination and report as to his sanity." While petitioner has been free on bail since June, 1973 without committing any reported act indicative of mental disease or defect, such good behavior is not conclusive of sanity. Indeed, petitioner does not argue that the psychiatric examination itself is violative of constitutionally protected rights. Petitioner asserts only that commitment prior to examination deprives him of equal protection of the law and due process. We disagree.

Petitioner's reliance on *Matter of Kesselbrenner v Anonymous* (33 NY2d 161, 165) which held that "[t]o subject a person to a greater deprivation of personal liberty than necessary to achieve the purpose for which he is being confined is * * * violative of due process," is misplaced as that case specifically dealt with persons whose confinement was not based on criminal charge or conviction. But even applying due process standards adhered to in *Matter of Kesselbrenner v Anonymous (supra)* and which were first established in *Jackson v Indiana* (406 US 715) petitioner's constitutional rights have not been denied. In *Jackson v Indiana (supra,* p 738) involving a person found incompetent to stand trial, the court said, "[d]ue process requires that the nature and duration of the commitment bear some reasonable relation to the purpose for which the individual is committed." Unquestionably defendants acquitted of their crimes on the grounds of mental illness compose an exceptional class, see *Matter of Miller (Lee)*

(46 AD2d 999). As the examination required by CPL 330.20 (subd 1) is to determine whether petitioner is dangerous, a determination best performed on an inpatient basis, a rational foundation exists to provide inpatient examination of petitioner. After commitment, petitioner can seek release by presenting evidence supporting a claim that the period of confinement is excessive *(People v Lally,* 19 NY2d 27, *supra).* The burden will then be upon the State to prove petitioner is dangerous so as to require continued incarceration *(Matter of Lublin v Central Islip Psychiatric Center,* 56 AD2d 1). Petitioner is not denied due process or equal protection of the law at the time of commitment; and CPL 330.20 provides for effective procedures to terminate the commitment should it no longer be necessary. (See, generally, *Matter of Lublin v Central Islip Psychiatric Center, supra,* and, for an interesting dissertation on this issue, see Schrag, Commitment of Persons Acquitted by Reason of Insanity: The Example of the District of Columbia, 74 Col L Rev 733.)

Accordingly, the judgment (denominated an order) of the Supreme Court, New York County (ROSENBERGER, J.) entered February 24, 1976, directing petitioner to be examined on an out-patient basis, should be reversed on the law, the petition denied, and petitioner committed for the purpose of examination, without prejudice to any application pursuant to CPL 330.20 (subd 5) for his discharge or release after examination and report by the Commissioner of Mental Hygiene.

BIRNS, J. (dissenting). I would affirm the order at Trial Term for the reasons set forth in the opinion of Justice ERNST ROSENBERGER. In my view that court correctly applied present day standards of due process and equal protection to CPL 330.20.

I would add, however, that petitioner falls outside the "exceptional class" referred to by the majority. Although CPL 330.20 (subd 1) requires forthwith commitment of a defendant acquitted by reason of mental disease or defect, the provisions of CPL 330.20 must be considered as a statutory unit. Subdivision 2 permits a court to release petitioner on a finding that he is "without danger to himself or to others". Petitioner herein has made a prima facie showing that he is not presently dangerous and respondent makes no claim that a proper examination of Henig cannot be conducted on an out-patient basis. Under such circumstances, the State must bear the

ultimate burden of proving the contrary. The recent case of *Matter of Lublin v Central Islip Psychiatric Center* (56 AD2d 1) cited by the majority, is instructive in this regard.

The petitioner in that case sought release pursuant to CPL 330.20 (subd 5). At a hearing, he came forward with proof that he was no longer dangerous; the State countered with its proof that petitioner could not be released "without danger to himself or to others". The County Court denied the petition for discharge, holding that petitioner failed to prove by a preponderance of the evidence that he was not presently dangerous to himself or to others. The Second Department reversed and remanded for a new hearing at which the State was made to bear the ultimate burden of proof. In so doing, the court ruled that presumptions of continued dangerousness, derived from the acquittal by reason of insanity, may not be relied upon to infer present dangerousness. Instead, it is the State which must bear the burden of establishing present dangerousness. Justice SHAPIRO, writing for the majority in *Matter of Lublin,* stated (p 16): "[M]edical and judicial *doubts* as to *future* dangerousness can never serve to sustain one's *present* deprivation of liberty. Such a test fails to pay even lip service to the constitutional standard set forth by the Fourteenth Amendment for deprivation of liberty". (Emphasis in original.)

Like *Lublin,* petitioner herein has come forward with proof that he is not dangerous. He has remained free in the community, without incident, for more than two years. Moreover, his psychiatrist certified to the court that he is not dangerous, not in need of hospitalization, and, in fact, that hospitalization was contraindicated. At this point, as in *Matter of Lublin,* the burden of proof to show otherwise shifted to the State. And, in this regard, the State has utterly failed to show that petitioner is presently dangerous or that an examination to determine his present mental state cannot be properly conducted on an out-patient basis.

Finally, petitioner was found not guilty by reason of mental disease or defect in November, 1975 for a crime committed almost six years earlier. Surely, the State may not rely on this stale determination to infer present dangerousness (cf. *People v Lally,* 19 NY2d 27), especially where petitioner has come forward with contrary proof. Slavish obedience to the mandate of CPL 330.20 (subd 1) denies this petitioner due process. (German and Singer, Punishing the Not Guilty: Hospitaliza-

tion of Persons Acquitted by Reason of Insanity, 29 Rutgers L Rev 1011, 1028, see n 75.)

KUPFERMAN and LUPIANO, JJ., concur with NUNEZ, J.; BIRNS, J., dissents in an opinion.

Judgment (denominated an order), Supreme Court, New York County entered on or about February 24, 1976, reversed, on the law, the petition denied, and petitioner committed for the purpose of examination, without prejudice to any application pursuant to CPL 330.20 (subd 5) for his discharge or release after examination and report by the Commissioner of Mental Hygiene, without costs and without disbursements.